UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SWITCH, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>IXMATION, INC.,<br><br>        Defendant. | Case No. 15-cv-01637-MEJ<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 6 |

## INTRODUCTION

Pending before the Court is Defendant ixmation, Inc.'s Motion to Compel Arbitration and to Dismiss or Stay Action pursuant to Federal Rule of Civil Procedure 12(b)(1).[1]  Dkt. No. 6. Plaintiff Switch (Assignment for the Benefit of Creditors), LLC ("Switch") filed an Opposition (Dkt. No. 17), and ixmation filed a Reply (Dkt. No. 19).  The Court finds this matter suitable for disposition without oral argument and VACATES the July 30, 2015 hearing.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** ixmation's Motion for the reasons set forth below.

## BACKGROUND

Switch is the successor-in-interest to Switch Bulb Company, Inc.[2]  Compl. ¶ 1, Dkt. No. 1-1.  Switch's business related to the design, manufacture, and sale of light-emitting diode (LED) light bulbs.  *Id.*  ixmation is in the business of designing and building production machinery and automation systems.  *Id.* ¶ 2.

In July 2013, ixmation provided a proposal to Switch to design and manufacture production machinery for Switch for $3,908,000 (the "Proposal").  A copy of ixmation's Proposal

---

[1] Although Civil Local Rule 7-2(b) requires all motions to be filed as one document, ixmation filed a separate Motion (Dkt. No. 6) and Memorandum of Points and Authorities in Support of Motion (Dkt. No. 7).  For citation purposes herein, the Court's references to ixmation's Motion refer to the Memorandum.

[2] For purposes of this Order, the Court shall refer to Switch (Assignment for the Benefit of Creditors), LLC and Switch Bulb Company as "Switch."

to Switch is attached as Exhibit A to Switch's September 9, 2014 Notice of Removal in *ixmation, Inc. v. Switch Bulb Co., Inc.*, No. 14-cv-6993, filed in the United States District Court for the Northern District of Illinois, Eastern Division (the "Illinois Action").[3]  The Proposal includes a provision that requires "any dispute, claim, question, or disagreement arising from or relating to this agreement or any claim breach thereof" that the parties cannot resolve on their own to be adjudicated by arbitration in Illinois.  Illinois Action, Dkt. No. 1; Glass Decl., Ex. 1, Dkt. No. 8.

On or about July 17, 2013, Switch submitted a written purchase order to ixmation for the design, manufacture, and delivery of a light bulb manufacturing machine.  Compl. ¶ 4 & Ex. A ("Purchase Order").  The Purchase Order contains Switch's terms and conditions of purchase, titled "Standard Conditions of Purchase," and does not include an arbitration provision, but instead provides that acceptance of the Purchase Order "shall be construed and governed in accordance with the laws of the state of California," with jurisdiction and venue in "the Superior Court of California for the County of Sonoma, or the United States District Court for the Northern District of California."  *Id.*, Ex. A.  Switch alleges that ixmation agreed to Switch's terms and conditions of purchase by its performance under the Purchase Order.  *Id.* ¶ 5.  In the following months, Switch proposed and ixmation accepted various change orders that modified the purchase price.  *Id.*  Copies of the change orders are attached as Exhibit A to Switch's Notice of Removal in the Illinois Action.  *See also* Glass Decl., Ex. 3.  In order to secure payment for the machinery, Switch opened a letter of credit (the "Letter of Credit") with Wells Fargo Bank, N.A. ("Wells Fargo") in August 2013.  Glass Decl., Ex. 1 (Ex. D to Switch's Notice of Removal in the Illinois Action).

In 2014, Switch alleges ixmation failed to adhere to the parties' agreed timetable for delivery of the machinery, after which Switch gave notice of termination of its order to ixmation.  Compl. ¶ 6.  In April 2014, ixmation initiated an American Arbitration Association ("AAA") arbitration proceeding in Illinois under the arbitration provision contained in its Proposal.  Mot. at

---

[3] As discussed below, ixmation previously brought suit against Switch in Illinois state court, and Switch subsequently removed that matter to the Illinois District Court's Eastern Division.  The Court takes judicial notice of the Illinois District Court's docket and documents filed therein.  *See* Fed. R. Evid. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

6; Opp'n at 2.

On September 5, 2014, after it had initiated the AAA arbitration proceeding, ixmation filed suit against Switch and Wells Fargo in Illinois state court. Illinois Action, Dkt. No. 1. In that case, ixmation requested that Wells Fargo be enjoined from terminating the Letter of Credit pending resolution of the arbitration proceedings. *Id.* On September 9, 2014, Switch removed ixmation's lawsuit to the Illinois District Court. *Id.*

Thereafter, on September 12, 2014, Switch filed a Motion to Dismiss, and in the Alternative, Motion to Compel Arbitration. Illinois Action, Dkt. No. 7. In that motion, Switch states it accepted ixmation's July 2013 Proposal, issued Purchase Order M00000016, and the two documents together became the parties' "Agreement." *Id.* at 2. Switch further argues ixmation's "dispute with Switch is subject to an arbitration agreement between the parties," and there "is no dispute that the Agreement contains a valid arbitration provision because the Agreement's terms expressly mandate arbitration." *Id.* at 1, 4. In a minute order dated September 17, 2014, the Illinois District Court denied Switch's motion on grounds related to ixmation's pending request for preliminary injunctive relief related to the Letter of Credit. Illinois Action, Dkt. No. 18.

Switch subsequently filed a second Motion to Dismiss, and in the Alternative, Motion to Compel Arbitration on October 10, 2014. Illinois Action, Dkt. No. 48. In its second motion, Switch incorporates its arguments from the first motion and argues that the court has no authority over the dispute as ixmation had already instituted an AAA arbitration. *Id.* at 1. The Illinois District Court did not rule on Switch's second motion, instead granting ixmation's oral motion to dismiss the case by minute order dated November 3, 2014. Illinois Action, Dkt. No. 61.

On March 6, 2015, Switch filed the present Complaint in Sonoma County Superior Court, alleging one claim for Breach of Written Contract. ixmation subsequently removed the case to this Court on April 10, 2015. Dkt. No. 1. ixmation filed the present Motion to Compel Arbitration on April 17, 2015.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written agreements to settle a controversy through arbitration "shall be valid, irrevocable, and enforceable, save upon such

3

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The central purpose of the FAA "is to ensure that private agreements to arbitrate are enforced according to their terms." *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011). In order to enforce an arbitration agreement, a court shall issue an affirmative order to proceed in arbitration if the court is satisfied "that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Thus, a court's role in applying the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted). The FAA leaves no place for the exercise of discretion by a district court. *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985).

In enacting the FAA, "Congress declared a national policy favoring arbitration . . . ." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *see also Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 n.8 (9th Cir. 1991) ("The [FAA] reflects the strong Congressional policy favoring arbitration by making such clauses 'valid, irrevocable, and enforceable.'") (quoting 9 U.S.C. § 2). Allowing parties to design an arbitration process tailored to their dispute allows for efficient, streamlined procedures. *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S. Ct. 1740, 1749 (2011). Thus, courts have consistently applied a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues [are to] be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25.

"When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Chavez v. Bank of Am.*, 2011 WL 4712204, at *3 (N.D. Cal. Oct. 07, 2011) (citing *Perez v. Maid Brigade, Inc.*, 2007 WL 2990368, at *3 (N.D. Cal. Oct. 7, 2007)).

4

**DISCUSSION**

In its Motion, ixmation argues the parties' agreement is subject to the arbitration provision contained in the Proposal it submitted to Switch in July 2013.  Mot. at 4.  The arbitration provision requires "any dispute, claim, question, or disagreement arising from or relating to this agreement or any claim breach thereof" that the parties cannot resolve on their own to be adjudicated by arbitration.  Glass Decl., Ex. 1.  Although Switch subsequently issued a separate Purchase Order, ixmation maintains Switch judicially admitted it accepted the terms and conditions in the Proposal, including the arbitration provision, when it argued before the Illinois District Court in its Motion to Dismiss "there is no dispute that the Agreement contains a valid arbitration provision because the Agreement's terms expressly mandate arbitration and, consistent with that mandate, [ixmation] has already initiated the arbitration."  Mot. at 10-11 (quoting Switch's first Motion to Dismiss at 4).

In response, Switch argues it did not sign or otherwise agree to ixmation's Proposal, and the parties have therefore never agreed to arbitrate their disputes.  Opp'n at 3.  As for the argument that Switch judicially admitted to being bound by the arbitration clause based on its filings in the Illinois Action, Switch argues that ixmation has either misinterpreted or misrepresented Switch's arguments.  *Id.* at 5.

It is well settled that "[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit."  *AT&T Techs., Inc. v. Commc'n Workers*, 475 U.S. 643, 648 (1986).  Thus, when a party disputes "the making of the arbitration agreement," the FAA requires that the "court [ ] proceed summarily to the trial thereof" before compelling arbitration under the agreement.  *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (citing 9 U.S.C. § 4).  The court's inquiry encompasses "not only challenges to the arbitration clause itself, but also challenges to the making of the contract containing the arbitration clause."  *Id.* (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991)).  As the Ninth Circuit clarified in *Sanford*, "[i]ssues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be determined by the court prior to

5

ordering arbitration." *Id.* (emphasis in original).

Under California contract law, the elements for a viable contract are (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999). Here, there is no dispute the parties were capable of contracting, their agreement for ixmation to design and manufacture a light bulb manufacturing machine related to a lawful matter, and delivery by ixmation and payment by Switch constitutes sufficient consideration. Thus, the only question before the Court is whether Switch consented to the arbitration agreement.

A party's acceptance of an agreement to arbitrate may be express or implied. *Bayer v. Neiman Marcus Holdings, Inc.*, 2011 WL 5416173, at *5 (N.D. Cal. Nov. 8, 2011), *aff'd* 582 F. App'x 711 (9th Cir. 2014); *Pinnacle Museum Tower Ass'n v. Pinnacle Mktg. Dev. (U.S.) LLC*, 55 Cal. 4th 223, 236 (2012). "Although an implied in fact contract may be inferred from the conduct, situation or mutual relation of the parties, the very heart of this kind of agreement is an intent to promise." *Friedman v. Friedman*, 20 Cal. App. 4th 876, 887 (1993) (internal quotation marks omitted). "[A] promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct." *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1050 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Apr. 28, 2015) (internal quotations and citation omitted).

Here, the Proposal and Purchase Order together could constitute the parties' agreement, as both appear to contain material terms. However, the Proposal contains an arbitration provision while the Purchase Order does not. Further, the Proposal provides that all disputes shall be governed by the laws of the State of Illinois, while the Purchase Order provides that California law applies and jurisdiction for any disputes exists exclusively in the Sonoma County Superior Court or the Northern District of California. While federal law is applied to the interpretation of forum-selection clauses, *see Doe I v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009), those general principles are difficult to apply on an undeveloped record with so many factual issues. Thus, it is not clear from the documents themselves that an agreement to arbitrate exists.

It is true "any doubts concerning the scope of arbitrable issues [are to] be resolved in favor

of arbitration," including "the construction of the contract language itself." *Moses H.*, 460 U.S. at 24-25. However, the same is not true on a motion to compel arbitration that is opposed on the ground that no agreement to arbitrate had been made between the parties. If there is doubt as to whether an express, unequivocal agreement to arbitrate exists, the matter should be submitted to a jury. *See, e.g., Three Valleys Mun. Water Dist.*, 925 F.2d at 1141 (indicating agreement with Third Circuit that, where there is a doubt as to whether an agreement to arbitrate exists, the matter should be submitted to a jury and "[o]nly when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement") (internal quotations and citation omitted); *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (indicating that, where a motion to compel arbitration "is opposed on the ground that no agreement to arbitrate was made," a court should apply a standard similar to the Rule 56 summary judgment standard—i.e., the court should give to the opposing party the benefit of all reasonable doubts and inferences that may arise, and "[o]nly when there is no genuine issue of material fact concerning the formation of an arbitration agreement should a court decide as a matter of law that the parties did or did not enter into such an agreement").

ixmation argues that a signed arbitration agreement is not required because Switch's agreement is reflected by its statements and conduct. Reply at 5-6. As noted above, Switch itself maintained in the Illinois Action that the dispute between the parties was subject to an agreement to arbitrate. In that case, Switch argued it accepted ixmation's July 2013 Proposal, and the Proposal and Purchase Order together became the parties' "Agreement." Illinois Action, Dkt. No. 7 at 2. It further argued "there is no dispute that the Agreement contains a valid arbitration provision because the Agreement's terms expressly mandate arbitration." *Id.* at 4. However, while the Court may consider Switch's previous argument as evidence of an agreement to arbitrate, it is not considered a judicial admission in this case. *See Nextdoor.Com, Inc. v. Abhyanker*, 2013 WL 3802526, at *8 (N.D. Cal. July 19, 2013) (an admission in a prior lawsuit, while admissible as evidence in a later proceeding, is not binding) (citing *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996)).

Further, Switch argues that it did not have the opportunity to contest the arbitrability of ixmation's claims at the time it filed its motions to dismiss in the Illinois District Court because ixmation had opened the AAA arbitration proceeding and was already attempting to assert rights under the arbitration provision. Opp'n at 5. Switch maintains it "simply argued that IXMATION's claims in the [Illinois] Lawsuit should be made part of the arbitration already pending. If the arbitration had proceeded, Switch would have moved for the arbitrator to conclude AAA lacked jurisdiction for want of an arbitration agreement." *Id.* at 5-6. ixmation argues this argument is "frivolous" and the Court should hold Switch to its prior statements because it is "playing fast and loose with the courts." Reply at 6-7. However, as noted above, the Court must construe all facts in a light most favorable to the non-moving party. *Chavez*, 2011 WL 4712204, at *3. Accordingly, because Switch disputes whether an arbitration exists, it would be inappropriate for the Court to find as a matter of law that the parties entered into such an agreement. The Court finds that fact questions need development and the record needs improvement before this issue can be sorted out.

Accordingly, the Court finds ixmation has not proven by a preponderance of the evidence that an agreement to arbitrate was formed between the parties.

## CONCLUSION

Based on the analysis above, the Court **DENIES** ixmation's Motion to Compel Arbitration. ixmation's Motion to Dismiss or Stay Action is therefore **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: July 21, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge